Julius LEE, Plaintiff,

v.

Joyce CARSON, et al., Defendants.

No. 02–CV–6177L.

United States District Court,
W.D. New York.

March 24, 2004.

Julius Lee, Dannemora, NY, pro se.

Kelly Ann McCarthy, Office of the New York State Attorney General, Rochester, NY, for Defendants.

*DECISION AND ORDER*

LARIMER, District Judge.

Plaintiff, an inmate in the custody of the New York State Department of Correc-

tional Services ("DOCS"), commenced this action *pro se* under 42 U.S.C. § 1983 on April 4, 2002 against various DOCS employees who provided medical services to plaintiff at the Five Points Correctional Facility ("FPCF"). Plaintiff claims that Physician's Assistant Mark Frederick, Administrative Nurse Joyce Carson, and Nurse Kimberly Kuhlman violated his Eighth Amendment rights through deliberate indifference to his serious medical needs in the summer of 2001.

Joyce Carson now moves for summary judgment on the ground that plaintiff has failed to exhaust his administrative remedies as to his claims against her, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and the Supreme Court's decision in *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). (Dkt. # 15). For the reasons set forth below, that motion is granted.

### PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he was under defendants' care at FPCF from June through August 2001. On June 3, 2001, plaintiff was tested for tuberculosis ("TB"). The test results were negative. Nevertheless, plaintiff was informed by, among others, Carson and PA Frederick, that he had a medical condition that "altered" the TB test results and therefore, pursuant to DOCS policy, he was required to take the medication. Plaintiff refused and was placed on "TB hold"(which meant he was deprived of all privileges, visitation, or phone use) on June 12, 2001, until he agreed to take the medication.

On June 17, in order to regain his privileges and to be released from TB hold, plaintiff agreed to take the medication. Plaintiff also claims that Carson assured him that the FPCF medical staff would monitor his condition while he took the medication for possible adverse side effects. Plaintiff began taking the medication on June 18.

Plaintiff claims that two days after he started taking the medicine, he began experiencing physical problems, including weight loss, difficulty urinating, dizziness, muscle weakness, chills, and headaches. Plaintiff alleges that he complained to various medical personnel, including PA Frederick and Carson, that he was experiencing these symptoms, but they "brushed off" his concerns and told him that he just needed to get used to the medication. Blood samples were drawn on July 19 and August 2, but no other examinations or treatment was provided. PA Frederick discontinued the medication on August 1, 2001. Plaintiff alleges that, during the time he was on the TB medication, he lost approximately 48 pounds and began to experience a loss of movement in his right arm.

On August 3, 2001, plaintiff woke to find that he had no vision in his left eye. He immediately requested emergency sick call. Thirty minutes later, at approximately 6:30 a.m., Nurse Kuhlman came to plaintiff's cell and spoke with plaintiff. Nurse Kuhlman stated that she would speak with the doctor. Plaintiff was not called to the medical unit until 1:30 p.m., at which point he was examined by PA Frederick. At this time, plaintiff still had no vision in his left eye and impaired vision in his right eye. PA Frederick ordered that plaintiff be taken immediately to the hospital, where he was diagnosed with severe anterior uveitis, an inflammation of the iris and ciliary body that is generally very painful and may lead to visual impairment or blindness. The Bantam Medical Dictionary (Laurence Urdang Associates, Ltd., Elizabeth A. Martin, ed., 1981). Plaintiff received treatment from the hospital over the next 25 days, but his follow-up care

with the ophthalmology clinic was disrupted because he was transferred to Upstate and then Attica Correctional Facilities.

Plaintiff commenced this action for damages against, among others, Carson claiming that she acted with deliberate indifference to his serious medical needs by "forcing" him to take the TB medication when he tested negative for the disease, by failing to respond to the physical problems concurrent with taking the medication, and ultimately, for plaintiff's loss of vision, which he claims is related to the TB medication.[1] Plaintiff seeks monetary damages.

## DISCUSSION

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." New York State regulations provide for a three-step administrative review process. *See* 7 N.Y.C.R.R. § 701.7. In general, it is only after exhausting all three levels of the administrative procedures that a prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001); *Peoples v. Beldock,* 212 F.Supp.2d 141, 142 (W.D.N.Y.2002). Nevertheless, the Second Circuit has held that the PLRA's exhaustion requirement is not jurisdictional in nature, and is, therefore, subject to equitable doctrines such as tolling, estoppel and waiver. *Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003) (per curiam).

Carson argues that the claims against her should be dismissed because plaintiff never filed a grievance with DOCS officials concerning the allegations he asserts against her in this lawsuit. Plaintiff does not dispute that he did not file a written grievance against Carson in 2001 specifically claiming that she forced him to take the TB medication despite a negative test result, or that she ignored his complaints of side effects from the medication. Instead, he offers several reasons why the failure to file a grievance should not result in dismissal of the claims against Carson.

I find that none of these reasons are sufficient to raise an issue of fact regarding whether plaintiff exhausted his administrative remedies or otherwise satisfied the exhaustion requirement. Further, plaintiff has failed to show that circumstances warrant any equitable relief.

■ First, plaintiff claims that he could not file a grievance against Carson in June, July, or August 2001 because he was not aware of the effects of the medication until August or September 2001. Therefore, he did not know until that time whether she had done anything wrong. Plaintiff claims that it would have been "inappropriate" for him to file a grievance against Carson at a time when she was telling him that there was nothing wrong with him and that he simply needed to get used to the medication. Further, he claims he is not a doctor and did not understand why he was experiencing the symptoms. He states he did not want to file a grievance "drawn on inferences of inconclusive evidence." It was only after he went blind and suffered from other side effects after a month that he filed a grievance against certain medical staff. Dkt. # 20, ¶ 6.

---

1. Plaintiff does not assert any claim against Carson based on the alleged unnecessary delay in recognizing and responding to the seriousness of the loss of vision in his left eye and impaired vision in his right eye. Those claims are asserted against PA Frederick and Nurse Kuhlman only.

This argument is insufficient to raise an issue of fact as to whether he exhausted his administrative remedies against Carson. In his amended complaint, plaintiff asserts that Carson was deliberately indifferent to his serious medical needs by forcing him to take the TB medication and then ignoring his complaints concerning the side effects of the medication. Plaintiff knew as early as June 18 that he was taking the TB medication under the threat of continued TB hold and even though he tested negative for the disease. Further, as asserted in his complaint, he knew as early as June 20 that he began experiencing side effects of the medication, and knew as early as June 25, that the medical staff allegedly was ignoring his complaints concerning the side effects of the medication. It is also not clear why plaintiff could not have filed a grievance once his condition deteriorated, requiring hospital care. Thus, plaintiff had knowledge sufficient to file a timely grievance against Carson regarding his claims.

■ Second, plaintiff claims that he did not grieve the issues against Carson in June, July, or August 2001, because the Inmate Grievance Review Committee ("IGRC") responded that medical decisions were not grievable issues. Dkt. # 4, p. 6. This contention, however, is belied by the record. The statement from the IGRC to which plaintiff is referring was made by the IGRC in September 2001 in its response to a grievance plaintiff filed regarding the treatment he received by emergency sick call on August 3, 2001. On August 17, 2001, plaintiff filed a grievance ("Grievance 3124") claiming that there was a substantial delay in treatment concerning the condition of his eye. *See* Dkt. # 20, Ex. 7, Grievance FPT–3124–01. Grievance 3124 makes no mention of any defendant by name, but instead refers to the nurse who responded to sick call (Nurse Kuhlman)

and the doctor who eventually treated him and sent him to the emergency room (PA Frederick). Importantly, plaintiff did not complain in this grievance that he was forced to take TB medication against his will or that he was not treated for the side effects that he experienced (weight loss, dizziness, headaches, etc.) during the previous month when taking the medication.

On September 4, 2001, IGRC responded to Grievance 3124 stating that "the medical decision must ultimately rest with the medical service staff since they are trained and experienced in that area and are cognizant of the resources available to them. The Grievant is further advised the IGRC does not have the authority to assess and determine medical protocol." The IGRC's response to plaintiff's grievance is dated September 4, 2001. Plaintiff did not receive the IGRC's response until sometime after he had been transferred to Upstate Correctional Facility on August 30, 2001. Therefore, the IGRC's response to plaintiff that it did not have the authority to assess and determine medical protocol in September 2001 does not explain why he did not file a grievance against Carson in June, July, or August 2001 based on the alleged forced medication and failure to respond appropriately to his complaints regarding certain side effects.

■ Third, plaintiff argues that he exhausted his administrative remedies against Carson through a "follow-up" grievance he filed in April 2003 concerning the FPCF's handling of Grievance 3124. However, the record shows that this "follow-up" grievance ("Grievance 37283") did not address the claims asserted in the complaint against Carson. Instead, Grievance 37283 asserted that IGRC at FPCF failed to properly process Grievance 3124 in a timely fashion and failed to inform him of his appeal rights after he had been transferred to a different facility, thereby

depriving him of his right to properly exhaust his administrative remedies with respect to the claims raised in Grievance 3124. In Grievance 37283, plaintiff claimed that he also was "grieving the original issue in 3124 pertaining to medication and the response time to emergency sick call." Dkt. # 20, Ex. 9, Grievance SS–37283–03. Plaintiff requested relief in the form of a "full and fair opportunity" to exhaust his administrative remedies concerning "the first issue in grievance number 3124–01, and the medical people responsible for my injuries to pay the sum of 5 million dollars." *Id.*

IGRC at Sing Sing Correctional Facility (where plaintiff was located when he filed Grievance 37283) accepted the grievance on April 22, 2003, stating that after an investigation by Inmate Grievance Program Director Thomas Eagen, he advised FPCF to treat Grievance 3124 as an appeal after transfer, and noted that it "should be expedited due to court dead line." Dkt. # 20, Ex. 10. The three-step administrative review process for Grievance 3124 was then completed when CORC issued its final determination on May 21, 2003. Dkt. # 24, Ex. A. Because the actual response by CORC to Grievance 3124 is not in the record, the final determination of Grievance 3124 is unclear. Nevertheless, there is no question that plaintiff exhausted his administrative remedies with respect to the claims against Nurse Kuhlman and PA Frederick in connection with the alleged delay in treatment by emergency sick call for his vision loss. Despite the fact that FPCF IGRC seems to have mishandled the original processing of Grievance 3124, that does not excuse plaintiff's failure to file a grievance against Carson based on the alleged forced medication of plaintiff and her failure to respond to his complaints of physical side effects.

In *Porter v. Nussle,* the Supreme Court recognized that the purpose of the PRLA was to afford correctional facilities the opportunity to address prisoners' complaints internally and in the first instance, and take whatever administrative action was necessary to address those complaints. In addition, Congress sought to filter out frivolous claims and allow more efficient adjudication of federal lawsuits filed by prisoners "by an administrative record that clarifies the contours of the controversy." *Porter,* 534 U.S. at 525, 122 S.Ct. 983. Here, the claims raised by plaintiff against Carson were never addressed at the facility level in the first instance. That plaintiff may have successfully grieved his claims against Nurse Kuhlman and PA Frederick (which are different than those asserted against Carson) is of no moment. *See Brewer v. Jones,* No. 02 Civ. 3570, 2004 WL 235269 (S.D.N.Y. Feb. 5, 2004) (plaintiff failed to exhaust administrative remedies for claims of excessive force against certain defendants even though he filed a grievance against one defendant based on the use of force incident because the grievance did not contain allegations against six other officers plaintiff later asserted were involved); *Luckerson v. Goord,* No. 00 Civ. 9508, 2002 WL 1628550 (S.D.N.Y. July 22, 2002) (plaintiff failed to exhaust administrative remedies when grievance he filed did not set forth the full nature of the allegations, claims, and remedies he sought to adjudicate in subsequent lawsuit).

Importantly, plaintiff does not argue, and the record does not show, that the original investigation in 2001 conducted by the IGRC or the follow-up investigation in 2003 conducted by FPCF Supervisor and the CORC in connection with Grievances 3124 and 37283 focused on the allegations asserted against Carson. If DOCS's investigation had addressed the issue of forced medication and failure to respond to

plaintiff's side effect complaints, then plaintiff's claims against Carson likely would be considered exhausted even though neither grievance names Carson specifically. However, that does not appear to be the case here.

Although the precise nature of the investigation conducted by DOCS in connection with Grievances 3124 and 37283 are not set forth in the record, the papers filed in support of Carson's motion (including the sworn affidavits of FPCF IGP Supervisor Janice Henrich and the New York State Attorney General's Office) clearly state that Grievances 3124 and 37283 did not relate to the claims against Carson and represent to the Court that plaintiff failed to exhaust his administrative remedies as to those claims. Therefore, the outcomes of Grievances 3124 and 37283 are not relevant to the issue of whether plaintiff exhausted his administrative remedies as to the claims he now asserts against Carson.

Fourth, plaintiff claims that he should be excused from filing a written grievance against Carson because on some unspecified occasion he told an unnamed Sergeant in the area where he was housed and an unidentified escort officer (neither of whom plaintiff claims was an immediate supervisor to Carson) that he was in fear for his life because he was not being helped for his complaints regarding the side effects of medication. Dkt. # 20, ¶ 7. However, DOCS regulations make clear that plaintiff cannot exhaust his administrative remedies in this manner. *See* 7 N.Y.C.R.R. § 701.7 (requiring plaintiff to file *written* complaint with the *IGRC* within fourteen calendar days of occurrence); 7 N.Y.C.R.R. § 701.11 (outlining procedures for claims of employee harassment and indicating that a claim could be made by reporting the employee misconduct or harassment to the immediate supervisor of the employee).

Finally, plaintiff claims that I.G.R.C. Supervisor Henrich told him that after he filed Grievance 3124 that "due to the multiple grievances filed by you I will not go against my co-workers in your favor. In addition, the incident that occurred is not a grievable issue." Dkt. # 20, ¶ 11. He does not argue how this alleged statement by Henrich affected his ability to file a grievance against Carson for the claims against her. In addition, Grievance 3124 did not relate to Carson, so that any statement by Henrich concerning the claims raised by plaintiff in Grievance 3124 is irrelevant to the issue of whether he exhausted his administrative remedies as to the claims against Carson.

Even if plaintiff is attempting to argue that it would have been futile for him to file a grievance against Carson, that does not excuse his failure to do so. If a statute mandates exhaustion of administrative remedies, even a futile administrative process must be utilized. *Giano v. Goord,* 250 F.3d 146, 150–51 (2d Cir.2001) (alleged ineffectiveness or futility of pursuing administrative remedies does not excuse inmate from obligation to exhaust his administrative remedies pursuant to the PLRA); *McNair v. Jones,* No. 01 Civ. 3253, 2002 WL 31082948, at *8 (S.D.N.Y. Sept. 18, 2002) (citing *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). Therefore, whether plaintiff believed that his efforts to use the grievance process would be futile is of no consequence. *See Berry v. New York,* No. 00 Civ. 2834, 2002 WL 31045943, at *7 (S.D.N.Y. June 11, 2002).

The explanations offered by plaintiff for his failure to pursue his administrative remedies against Carson are not sufficient to withstand her motion for summary judgment. Plaintiff had remedies available to him to address his claims that he was forced to take TB medication against

his will and that Carson did not respond to his complaints regarding the side effects of the medication and chose not to pursue them. Plaintiff makes no allegation that prison officials obstructed his ability to pursue his administrative remedies. Nor does plaintiff claim that the IGRC or Carson would not allow him to file a grievance against her or did not otherwise act on a grievance that he did file against her. *See Reyes v. Punzal,* 206 F.Supp.2d 431, 434 (W.D.N.Y.2002). Therefore, his claims against Carson must be dismissed for failure to exhaust administrative remedies pursuant to the PLRA.

## CONCLUSION

Defendant Joyce Carson's motion for summary judgment (Dkt. # 15) is granted and the claims against her are hereby dismissed with prejudice.

IT IS SO ORDERED.